IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CATHY A. MILLER,                    )
                                    )
            Plaintiff,              )          Civil No. 06-789-SU
                                    )     FINDINGS AND RECOMMENDATION
      vs.                           )
                                    )
HARNEY COUNTY SCHOOL DISTRICT       )
NO. 4, HARNEY COUNTY UNION          )
HIGH SCHOOL DISTRICT NO. 1J;        )
and TIM ADSIT,                      )
                                    )
            Defendants.             )
————————————————————————————————————)

SULLIVAN, Magistrate Judge:

      Cathy A. Miller filed a Complaint against defendants Harney

County School District No. 4, Harney County Union High School

District No. 1J (collectively School District), Tim Adsit[1] and

_____

      [1]    Tim Adsit is a former superintendent of the School District.

1 - FINDINGS AND RECOMMENDATION

Mark Hofman,[2] in their official and individual capacities, alleging a state law claim for breach of contract and a violation of 42 U.S.C. § 1983 for denial of her First Amendment and corresponding state constitutional right to free speech. The School District and Adsit filed a motion for summary judgment on all claims and oral argument was heard. For the reasons that follow, the School District and Adsit's motion for summary judgment should be granted, in part, and denied in part.

## STATEMENT OF FACTS

Miller had been employed as a custodian with the School District from 1985 to 1996 and again from 1999 to 2000. She was laid off by the School District in 2000 and as a result filed a lawsuit in federal court. Miller and the School District negotiated a Settlement Agreement in 2003 that granted her the right to interview for all custodial job vacancies arising in the School District between 2003-2008.[3] (Compl. Ex. A at 3.)

---

[2]    On February 9, 2007, Hofman, the maintenance supervisor for the School District, was dismissed from this action pursuant to a Stipulated Judgment of Dismissal.

[3]    The pertinent provision of the Settlement Agreement is as follows:

For the period of five years from the date of the execution of this agreement, Employer shall grant Miller the right to apply and be considered for any vacant custodial position with the Employer, subject to the limits described below. When and if any custodial vacancies arise during the five year period, the District will provide Miller written notice by certified mail of all such positions and grant her 14 days to apply for the position. Should Miller submit an application, the District will follow the procedures set out herein. The District will convene a hiring committee for the custodial vacancy. The committee shall consist of four current school board members, two from the Elementary Board and two from the High School Board. Cathy Miller shall have

A custodial position became available in the Fall of 2003. The school board decided to seek an outside contractor for the work and issued a request for proposal (RFP) for the custodial work.   (Adsit Dep. 24:1-14, Sept. 15, 2006.)  After the school board received no bidders on its RFP, the school board decided to fill the position with two half-time "temporary" employees. (Miller Decl. ¶ 9.)  To Adsit's knowledge there had never been an attempt to privatize custodial work before the execution of the Miller Settlement Agreement nor had the School District ever filled a full-time position with two half-time employees. (Adsit Dep. 33:4-5; Miller Decl. ¶ 10.)

Miller received a notice of vacancy in March 2005. She went to the School District office and requested an application, which she obtained from the Deputy Clerk. (Miller Decl. ¶ 15.) Miller, along with four other individuals, submitted an application for the custodial position.  (Adsit Dep. 97:7-10, 100:15-21.)  Subsequently, Adsit sent Miller and the other applicants a letter advising that the school board decided not to fill the custodial position.  (Adsit Dep. 121:21-25, 122:15-20.)

Miller alleges that between the time the school board authorized hiring a new custodian in March 2005, and April 12, 2005, when it cancelled that hiring process, it still had

---

the right to select two members of the hiring committee....The remaining two members shall be selected one by each Board.  The committee shall recommend a candidate. . . .

sufficient funds to fill the custodian position.  The School District claims that a reduction in State funding prompted the school board to cancel the hiring process.  (Adsit Dep. 108:5-25.)  According to Miller, the school board decided to review "other options" after she applied.  (Adsit Dep. 109:2-9.)

At the June 14, 2005, school board meeting, Miller raised matters of public concern regarding school grounds. (Clark Dep. 39:24-40:2, Nov. 2, 2006.)  Miller's concerns involved Adsit's alleged neglect of his duties as superintendent. (Miller Decl. ¶ 13.)  The parties agree that Adsit viewed Miller's complaints as beneficial because the School District instigated a review of student safety.  (Adsit Dep. 123:16-124:2; Sari Decl. ¶ 2 Ex. 1.)

On August 16, 2005, Miller filed a formal complaint against Adsit with the Teacher Standards and Practices Commission (TSPC) accusing Adsit of "Gross Neglect of Duty" and "Gross Unfitness." (Compl. Ex. B.)  Adsit was unhappy and frustrated that Miller filed the TSPC complaint against him. (Adsit Dep. 137:11-14, 145:12-13.)  Adsit resigned as superintendent before the end of the school year.

In July 2006, a new superintendent, Jeff Walker, was hired by the School District.  Walker was aware that a TSPC investigator, Susan Nisbet, was in the town of Crane due to Miller's August 2005 TSPC complaint against Adsit. (Walker Depo.,

4 - FINDINGS AND RECOMMENDATION

115: 11-14, Nov. 3, 2006.)  While in Crane, Nisbet discovered that Walker, who had already begun work as superintendent in Adsit's place, did not have a current superintendent's license. (Nisbet Dep. 100:18-25, June 6, 2007.)  According to Nisbet, Walker became angry at Nisbet when he realized she worked for TSPC and began yelling at Nisbet that TSPC was an incompetent organization because he could not get the Commission to issue a license for either himself or his wife.  (Nisbet Depo, 97:19-22.)

By the summer of 2006, the School District employed only one full-time custodian.  (Walker Dep. 52:6-17.)  At a July 2006 school board meeting, Walker recommended that the School District hire another full-time custodian.  (Walker Dep. 51:15-23.) Miller received written notice that a full-time custodial position had opened and she was invited to apply, which she did. (Miller Dep. 36:10-22, Sept. 15, 2006.)  In accordance with the Settlement Agreement, Miller selected school board members Norman Clark and Linda Miller for the interview committee.  (Miller Dep. 36:23-37:3.)  Interviews for the custodial position, conducted on August 21, 2006, occurred within two to three weeks of Walker's altercation with Nisbet.  (Walker Dep. 116:12-14.)

Walker alleged that he did not receive Miller's job application.  According to Walker, the application was lost in the mail and the envelope did not arrive until after the interviews.  (Walker Dep. 60:6-10.)  Miller testified that she

5 - FINDINGS AND RECOMMENDATION

mailed her application in the town of Crane for delivery within the town to the School District office; such mail normally arrives within two days. (Miller Decl. ¶ 16.) In advance of the interviews, the school board was mailed copies of the applications for all applicants except Miller. (Walker Dep. 88:18-25.) Walker testified that he did not believe it was "important for [him]" to call Miller and request her application. (Walker Dep. 89:22-90:4.)

Miller assumed that the school board had her application during her interview and, therefore, it was unnecessary for her to review her past experience and skills, including past experience with the School District. (Miller Decl. ¶ 20.) The hiring committee noted that Miller did not discuss her prior school experience while answering questions and this fact weighed against her during the hiring process. (Clark Dep. 83:1-5, 86:11-17.) Eight of fifteen questions by Walker to the candidates focused on conflict in the workplace. (Walker Dep. 82:16-24.) Miller maintains that she was at a disadvantage due to the numerous questions focusing on conflicts with coworkers because of her adversarial history with the School District. (Miller Decl. ¶ 24.)

The parties dispute whether, pursuant to School District policy, administrators are required to utilize job descriptions in determining the qualifications for a position. (Diamond Decl.

6 - FINDINGS AND RECOMMENDATION

Ex. D at 14.)  Walker testified that he did not use the custodian position description in the process that led to DaeNell Douglas being hired for the full-time custodian position.  (Walker Dep. 77:25-78:3.)  Miller alleges that she was not asked any questions about her custodial experience or skills.  (Miller Decl. ¶ 19.)

Walker believed that all of the interviewees did equally well in their interviews and were equally qualified.  (Walker Dep. 97:15-17, 108:7-10.)  Walker testified that Miller was just as "bubbly and upbeat" as all the other candidates and did not seem less enthusiastic than the other candidates.  (Walker Dep. 105:18-25, 110:2-4.)  In contrast, school board member Linda Miller testified that Miller was "really down and there was no life there, no enthusiasm."  (Linda Miller Dep. 98:15-23, Nov. 2, 2006.)

Applicant Douglas testified that, during her job interview, a list of the interview questions was "laid . . . down in front of [her]."  (Douglas Dep. 23:22-24:6, April 5, 2007.)  During her interview, Douglas was assisted by Walker who would listen to her answers and then restate them in a more polished way.  Douglas testified that she was not answering the questions as professionally as she should have and she appreciated Walker's assistance.  (Douglas Dep. 25:21-27:3.)  Miller alleges that Walker did not assist her in answering any questions during the

7 - FINDINGS AND RECOMMENDATION

interview nor was she provided a copy of the questions during the interview.  (Miller Decl. ¶ 22.)

Douglas's application demonstrated that she had no prior experience working as a school custodian.  (Douglas Dep. 61:18 Ex. 13.)  School board member Clark testified that he viewed applicant Terry Crisp as the most qualified applicant because of his mechanical ability as described by Crisp's answers to interview questions.  (Clark Dep. 71:2-22, Nov. 2, 2006.)  Linda Miller testified that Douglas was hired instead of Miller because the team viewed Douglas as more "upbeat" and "attitude was the big issue."  (Linda Miller Dep. 101:5-9.)

Attached to Exhibit A of her Complaint is a letter of reference from Adsit in which he states that at the time Miller was laid-off in 2000, she was considered one of the School District's best workers.  (Compl. Ex. A attachment.)  Miller alleges that when she signed the 2003 Settlement Agreement, which included Adsit's letter of reference, she expected that the School District would utilize the agreed-upon reference letter in considering her future employment and would fill custodial vacancies as it had in the past.  (Miller Decl. ¶ 6.)

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id*. at 324. Assuming that there has been sufficient time for discovery, summary judgment should be entered against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

## DISCUSSION

### I.  Breach of Implied Covenant of Good Faith and Fair Dealing

In her Complaint, Miller alleges that the School District and Adsit breached the Settlement Agreement by failing to: (1) provide official notice of all custodial vacancies; (2) afford her fair consideration for each vacancy; and (3) hire her as the most qualified candidate for a custodial position. (Compl. ¶ 32.) Miller alleges the School District violated the duty of

9 - FINDINGS AND RECOMMENDATION

good faith and fair dealing by frustrating the objectively reasonable expectations of the parties, including the reasonable expectations that the School District would neither intentionally avoid creating full-time positions nor act unfairly during the interview process.

The School District seeks an entry of judgment against Miller's claim for breach of contract on the ground that the process set forth in the Settlement Agreement for providing Miller the opportunity to apply for available custodial positions was followed.  The School District contends it did not breach its duty of good faith and fair dealing in 2005, because the decision to cancel the hiring process came only after learning the School District would not receive sufficient state money to fund the position.  Further, in 2006, Miller was notified of the custodial position and, in fact, she applied and was interviewed along with five other candidates in accordance with the terms of the Settlement Agreement.

Finally, the School District maintains that the Settlement Agreement did not bar the School District from issuing an RFP for custodial work in 2003, and to find otherwise would modify the terms of the Settlement Agreement.  The School District contends that Miller's reliance on the implied covenant of good faith and fair dealing is misplaced because she "looks far beyond the terms

of the contract to find a breach of the implied covenant."[4]
(Def.s' Memo. Reply 2.)

Every contract contains an implied duty of good faith and
fair dealing. *Uptown Heights Associates v. Seafirst Corp.,* 320
Or. 638, 645, 891 P.2d 639 (1995). The duty is applied in a
manner to effectuate the objectively reasonable contractual
expectations of the parties. Neither party may engage in any act
that will destroy or injure the right of the other to receive the
benefits of the bargain or that may undermine the justified
expectations of the parties. *Best v. United States Nat'l Bank*,
303 Or. 557, 562-63, 739 P.2d 554 (1987). Nevertheless, only the
objectively reasonable expectations of the parties will be
examined in determining whether the obligation of good faith has
been met. *Pacific First Bank v. New Morgan Park Corp.*, 319 Or.
342, 352, 876 P.2d 761 (1994). The focus is on the parties'
agreed common purpose and justified expectations, both of which
are closely related to the express provisions of the contract.
*Pollock v. D.R. Horton, Inc.*, 190 Or. App. 1, 77 P.3d 1120
(2003).

Turning to the Settlement Agreement, the parties agreed
that, for five years, Miller had "the right to apply and be

---

[4]    The School District argues that, in any event, Adsit must be
dismissed from Miller's breach of contract claim because he was not a party to
the Settlement Agreement. At oral argument, Miller's attorney conceded that
Adsit was not a party to the Settlement Agreement and dismissal was
appropriate. Accordingly, summary judgment should be entered against Miller's
breach of contract claim as to Adsit.

considered for any vacant custodial position" with the School
District.  (Compl. Ex. A at 3.)  Based on the unambiguous terms
of the Settlement Agreement, it was objectively reasonable for
Miller to expect the School District would follow the express
provisions of the contract with regard to vacant custodial
positions and neither intentionally avoid creating custodial
positions nor act in bad faith during the hiring process for
custodial positions.  Additionally, Miller has presented some
evidence creating a genuine issue of fact whether the School
District complied with the terms of the contract and acted in
good faith and dealt fairly with her at all times with respect to
its obligations under the Settlement Agreement.

     For example, Miller presented evidence that the School
District attempted to privatize the custodial work only after the
Settlement Agreement was in effect; that the School District
attempted to avoid offering a full-time custodial position and
instead offered two part-time positions; that the School District
cancelled the March 2005 vacancy only after all applications were
submitted, including Miller's; that despite the School District's
allegation of cancelling the March 2005 vacancy for financial
reasons, adequate money may have remained to fund the position.

     Miller also presented evidence that during the 2006
interview process, Walker crafted interview questions designed
specifically to disadvantage Miller; that Miller was the only

12 - FINDINGS AND RECOMMENDATION

candidate who did not have her written application provided to the school board, which both deprived the school board of an opportunity to review Miller's past experience and qualifications and gave the appearance that Miller had neglected to submit a written application; that the alleged failure to follow the custodian job description in determining hiring criteria violated School District Policy; that Walker assisted Douglas during her interview, including providing a written copy of the interview questions and "reframing" or "polishing" her responses; and, finally, that the decision was made to hire Douglas over Miller.

While the court understands that a school district has difficult decisions to make regarding employment and budgetary matters, viewing the evidence in the light most favorable to Miller, a jury could infer that the School District's actions regarding Miller were in bad faith and interfered with the objectively reasonable contractual expectations of Miller; namely, that custodial positions would come available in accordance with the School District's usual practices, and Miller would be considered for those positions without bias.  The School District's request for summary judgment against Miller's breach of contract and breach of the duty of good faith and fair dealing claims should be denied.

## II.  42 U.S.C. § 1983

Next, Miller contends that the School District and Adsit violated her First Amendment rights by retaliating against her as a result of:  (1) her report to the school board, on or about June 2005, regarding dangerous conditions and safety risks at Crane schools; and (2) her report of safety issues and "other concerns" to the TSPC on or about August 17, 2005, including charges of gross neglect of duty, gross unfitness and neglect, misuse and waste of School District property against Adsit. (Compl. ¶¶ 23-25.)

To prove retaliation in violation of the First Amendment, "an employee must show (1) that she engaged in protected speech; (2) that the employer took 'adverse employment action'; and (3) that his or her speech was a 'substantial or motivating' factor for the adverse employment action." *Coszalter v. City of Salem,* 320 F.3d 968, 973 (9th Cir. 2003).  If a plaintiff establishes the elements of a retaliation claim, "the government can escape liability by showing that it would have taken the same action even in the absence of the protected conduct." *Keyser v. Sacramento City Unified School Dist.*, 265 F.3d 741, 750 (9th Cir. 2001).

For purposes of summary judgment, the School District concedes that Miller's speech was constitutionally protected, but contends that summary judgment should be granted against Miller's

14 - FINDINGS AND RECOMMENDATION

42 U.S.C. § 1983 claim because she failed to establish that her
speech was a substantial or motivating factor in the decision not
to hire her.  (Def.'s Memo. Supp. Summ. J. 4.)  The School
District contends that Miller's June 2005 speech was too remote,
occurring more than one year prior to the August 2006 hiring
decision.  Moreover, the School District maintains that the
August 2006 hiring process was in accordance with the terms of
the Settlement Agreement and, therefore, could not be evidence of
pretext.

"A First Amendment retaliation suit may be met with either
direct or circumstantial evidence, and involves questions of fact
that normally should be left for trial."  *Ulrich v. City & County
of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002)(citation
omitted).  The Ninth Circuit has identified several "nonexclusive
categories" of evidence that are probative of motive, including:
"(1) proximity in time between the protected speech and the
alleged retaliation; (2) the employer's expressed opposition to
the speech; and (3) other evidence that the reasons proffered by
the employer for the adverse employment action were false and
pretextual."  *Id.* (quotation and citations omitted).

Miller has provided some circumstantial evidence of both
proximity in time and pretext.  With respect to proximity in
time, Miller presented evidence that the TSPC investigator was on
site only weeks prior to the August 2006 decision not to hire her

for the custodial position.  In fact, the TSPC investigation was
ongoing at the time of the hiring decision.  While the
investigation centered on Adsit, who left his position with the
District before the investigation was complete, Walker may have
had animus toward Miller as a result of the TSPC complaint
because the investigator, Nisbet, determined that Walker did not
have a superintendent license which was required for Walker's
position.  Miller alleges that this failure by Walker to obtain
proper licensing placed his job in jeopardy.  Thus, there is some
circumstantial evidence of proximity in time between Miller's
speech and the School District's failure to hire.

     With respect to circumstantial evidence of pretext, Miller
had many years of successful experience as a custodian and she
alleged that she was more qualified than the other applicant who
was offered the position.  Additionally, Miller submitted some
evidence that Douglas was treated preferentially throughout the
August 2006 hiring process and that Miller did not receive the
same consideration, i.e., her application was not before the
school board.  Walker also testified that people may have
difficulties working with Miller based on her history of
complaints.  A jury could determine that Walker's failure to give
Miller's application to the interviewing committee, his
assistance during the interview to the successful candidate and
his questions focusing on workplace conflict were evidence that

Miller was not fairly considered for the custodial opening and that the District, acting through Walker, retaliated against Miller for her protected speech.  Moreover, a jury could infer that Walker and the School Board interviewing committee disregarded Miller's custodial experience because they were angry about her ongoing complaints that included legal action.  A factual dispute between the testimony of Walker and Linda Miller also draws into question whether attitude rather than objective qualifications caused the interviewing committee not to select Miller.  Thus there exists some circumstantial evidence that the School District's decision to hire another candidate instead of Miller was pretextual.

In sum, Miller has submitted sufficient evidence to create a factual dispute whether her June 2005 comments and her TSPC complaint were substantial or motivating factors in the School District's decision not to hire her.  Accordingly, the School District's request for summary judgment against Miller's section 1983 claim should be denied.

Finally, the School District argues that, in any event, Adsit is entitled to summary judgment against Miller's section 1983 claim.  The court agrees.  Miller's protected speech that provides the basis of her First Amendment claim occurred after the March 2005 custodial hiring process was cancelled by Adsit.  Furthermore, Adsit was no longer employed by the School District

in August 2006, when Miller was passed over for the position. Accordingly, summary judgment should be entered against both Miller's contract claim (set forth above) and her section 1983 claim as to Adsit.

### CONCLUSION

Based on the foregoing, the School District's Motion for Summary Judgment (doc. #50) should be GRANTED, in part, and DENIED, in part, and defendant Adsit should be DISMISSED with prejudice.

Dated this __15th__ day of April, 2008.


_____/s/ Patricia Sullivan_____
Patricia Sullivan
United States Magistrate Judge


### SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due April 30, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

18 - FINDINGS AND RECOMMENDATION